Good morning, counsel. Good morning. May it please the court, Kristen Thayer on behalf of appellant Jeffrey Donnelly. I would like to reserve three minutes for rebuttal and I'll watch my time. All right. I'd like to thank the court for expediting the briefing and hearing of Mr. Donnelly's appeal. Time is of the essence as he is released from BOP custody in April, and he will at that point begin serving his supervised release term. So practically speaking, what's at issue for resentencing is the supervised release term, which would need to be knocked down from five years to one to three years under the statutory maximum. So practically that's what we're dealing with here today, and I appreciate the court's expedition. I'd like to focus on two points today, the first point being that the government's briefing conflates a timeliness issue with the merits of a motion to vacate, and the second point being that the government has waived any challenge to that timeliness, that threshold issue. So the first point, the government's briefing sort of conflates and combines and mixes together the threshold analysis of whether a defendant has raised, whether Donnelly specifically raised a Johnson claim validly, and whether he has proven and met his burden to succeed on the merits. And what further complicates the government's position is that the government is asking the court to adopt the second or successive motion to the vacate standard. When Donnelly has raised, he filed a first motion, so there's a different threshold standard as to how you are able to raise. Roberts, what's the difference in your view? The difference is in the actual statute, 2255H. 2255H — oh, I'm sorry, Your Honor. 2255F3 governs first motion. I know what both those provisions say. I'm asking what, from a practical standpoint, in your view, is the difference? Yes, Your Honor. The practical difference is that for a first motion to vacate, you merely have to assert the right that was retinually recognized. So that's sort of a pleading standard. It's how you bring your claim. You say, I assert the due process claim under Johnson. I assert that right. And then now I proceed. And if you file it within the year of Johnson, then it's timely. You've met that threshold. For second or successor, it's completely different. It's a much more particularized standard with this reliance on standard that the Giozzo's case fully explored, set forth the standards for how a defendant must show reliance either with express statements that the district court relied on the residual clause or whether it's unclear. And that's just a totally different scenario. And it makes sense because it's much harder to bring a second motion to vacate. So, all right. So in your view, just bringing it down to our specific context, let's say it was crystal clear at the original sentencing that the district judge relied. Are you able to hear me? Yes. I hear you. Sorry about that. The cold. Yeah. We're all battling that. Yeah. So it's crystal clear that the district court relied solely on the force clause, right, at the original sentencing. In this case? No, no, no. I'm just trying to understand. Oh, in theory, yes. Yeah. So let's say we have a case where that's true. You would say, and, you know, the sentencing happened 10 years ago. So you would say that if it's a first petition, all the person has to do is just assert that, hey, I'd like to take advantage of this Johnson case, even though it's obviously not going to be of any help. The petition would be timely, but then the person would just lose on the merits? Is that? I'm just trying to get a sense from a practical standpoint how you think the analysis is going to differ in the two contexts, first versus successive. Yes, Your Honor. And I would agree with half of that. So I agree that that's how you would timely assert the claim, to assert the due process right under Johnson within the year. That gets you into the world of the merits. But as Giosos actually shows, and I reread it preparing for this case, the merits section in Giosos doesn't address at all what happened at sentencing. It just addresses the purely legal analysis of the categorical approach for the force clause to see if the Johnson error, you know, the residual clause being knocked out of the defendant relief. Well, see, no. That's why I guess I'm not sure your position is right. Because the only reason you're allowed to come in 10 years later, let's say, and even be heard, is because Johnson came down. And all Johnson did was knock out the residual clause. So it seemed, so you're not going to get a fresh force clause analysis 10 years after the fact if it was crystal clear at the original sentencing that the district court relied solely on the force clause, right? So I'm not, I don't think your position can be right. I'm guessing that if we really drill down, the standard is going to be basically the same. You're still going to, you as the Petitioner's counsel, are still going to have to show to some extent that the residual clause at least was possibly the basis for the sentence in order to come in 10 years later and invoke Johnson as a basis for getting it to court. So that's the point. Yes, I understand the Court's position. And I understand the practical nature of that reasoning. It just, it wouldn't make sense to conflate the second or successor petition, or motion to vacate standard with the first motion. So if you follow the GIOZOS roadmap, you would just, instead of having the first reliance on section, you would just have, did you assert the right under Johnson? And then you move on to the merits. And the merits just addresses the force clause issue in GIOZOS. And that's, that's what the Court decided to do in that case. And I would submit that's proper here. So we would just, first, and that kind of moves into my second point, is that the government has waived any challenge to this timeliness aspect, to whether Mr. Donnelly asserted a claim, the right under Johnson, which is that threshold analysis to get you within a timely motion to vacate. Because, not raised in district court? Yes. And the government only engaged on the merits below and argued the second step, which is whether the force clause, whether the priors qualified under the force clause still, regardless of the residual clause. Let me ask you a question. This hasn't had to do anything specific with your case, but how we generally treat these things. The Supreme Court turns things around every now and then. Sometimes we agree, sometimes we disagree. But that's the law. But as an appellate court, we're not in a position to do some sentencing on the ad hoc. So what we do is we vacate the sentence and we send it back to the district court to make a determination. Now, here, the Supreme Court's only knocked out the residual clause. If it came under one of the other clauses, it could still be valid. Why wouldn't we send it back to the district court to make that determination? That's what we do in most all other cases. To address the force clause, Your Honor? To address what you do now, whether the residual clause was where it was actually sentenced and so they have to change it, or no, that it was okay under one of the other two clauses. Well, Your Honor, I have two answers to that. So first, the Geozo's decision confirms that these Florida priors, the robberies, do not qualify under the force clause. And the residual clause cannot be used. That is, we aren't going to care what the Eleventh Circuit said. We have to decide it this way. So you say we don't have to send it back at all? No. This Court would need to send it back for resentencing, but not for the district court. The district court already conducted the merits analysis and came out the other way that held that these robberies qualified under the force clause. Why wouldn't we send it back to the district court saying, now you've got what the Ninth Circuit has said, resentence? Yes. And that's exactly what we would be asking. I apologize, Your Honor. I was misunderstanding. That's what we would be requesting, is that this Court vacate or reverse the order denying the motion to vacate and send it back for resentencing. You see, that's the difference, reverse or vacate. If we're sending it back for the district court to make the determination, we vacate. And that's what we ordinarily do. But it seemed to me you were arguing for us to make that decision for the district court, and I wanted to know why. I understand. I understand the Court that it's a procedural issue. I think that the proper procedure, because this was an order, would be to reverse the order, and then through resentence, and then the Court would be granting the motion to vacate and granting, and at that point that would vacate the judgment, and then he could do a de novo resentencing. If we vacate and remand, it is gone, and he can make the decision, he or she can make the decision the way it should be. Has he served 15 years? He has served over 13 and a half years. So we still have a little time. He's out of BOP custody in April, so. So we could actually vacate and send it down to the district court to do the work? Yes, and at that point it would most likely be mostly assessing the supervised release term, which also gets adjusted downward because of statutory minimums and maximums. Would you be satisfied with that? Yes, Your Honor. We would just like realistically the most expeditious way to get Mr. Donnelly some relief with the custodial portion of his sentence and at the very least his supervised release term addressed. There's no work for the district court to do here. I think maybe that's why the two of you are miscommunicating. The Gioza's case, is that how we're saying it, has already done all of the merits work for us. Yes. So there's nothing for the district court to do. The sentence that was imposed originally was illegal now under our circuit's law. So I think what you're saying to Judge Wallace is simply that the only thing that would happen on remand is that the supervised release term can no longer, I mean, we should order his immediate release today. Yes. Because he's already served beyond the statutory maximum that otherwise applies, and the supervised release term will need to be shrunk down. Yes, Your Honor. Thank you so much. That's exactly the point I was trying to communicate, that his custodial sentence should be immediately vacant, that he should be immediately released, and then the district court would have some discretion as to whether he imposes one to three years of supervised release on remand, if that clarifies. Do we have a case that says we must do it that way? The Giozzo's case, that was what the court decided, the panel ordered in that case, that because the defendant had already served over the 10-year custodial sentence, so immediately. Yes, I understand that. That's why I asked how long he was in. But it strikes me to be rather interesting to have three appellate court judges decide on what type of supervised release he's to have. That's why I wondered why we would be put in that position. We don't just release him. If it goes back to district court, the release would be under certain conditions, I suspect. Well, in this case, it would be under his supervised release conditions. If this court ordered his immediate release, as the Giozzo's court did, then he would immediately start serving supervised release, which would be those terms that were imposed at the original sentencing. And then at that point, the district court could just set a resentencing to address just the term, the length of the supervised release. But he would be under those conditions if he were released immediately, the supervised release conditions. All right, counsel. We wouldn't have to order that? If we reverse the sentence, we've reversed the sentence, including the supervised release. Wouldn't if we just sent him free, how would that be if we vacated him as if he's never been sentenced? I mean, if we reverse, it's as if he's never been sentenced. So he would actually be completely free to do whatever he wants to do without any supervised release. No, Your Honor, and that's why I think this court would be reversing the order, denying the motion to vacate, and remanding for resentencing, and at the same time ordering his immediate custodial release, versus he's not free from all restraint. It would just be BOP custody. Because right now he's still confined to his BOP halfway house. And at that point, it would be the supervised release term that would begin, and then the court could, and then district court would then be able to have a resentencing to adjust the sentence. So in Geosis, the court, we said, we reversed the district court's order denying defendant's 2255 motion and remand with instructions to vacate defendant's sentence. So we didn't reverse the sentence. I'm on page 901. Yes. At the very end where the court reiterated its ruling. Yes, Your Honor. The very last paragraph of the case. Yes, yes. And this court could do the similar instructions and also instruct that the court, that the defendant be continued on supervised release if the court were concerned about that. That the defendant begin a supervised release term. All right, counsel. You've exceeded your time. Thank you, Your Honor. Now you're going to tell us why that didn't make any difference because the district court was right in the first place. Well, actually, I'm going to say that it didn't make any difference because the defendant hasn't met his burden here. And to go to your question, Judge Watford, or the point that you were making, it's true that the criteria for initial 2255s and second or successive 2255s are different and that the burden for second or successive is much higher. But in both cases, the defendant has to show that that supreme court decision on which they're relying affects their case or would have a. So, counsel, just so I understand your argument, are you conceding on the merits? Giozo's is the law of the circuit. Okay. All right. So the only way you can prevail on this case is if you persuade us that procedurally the defendant did not properly request relief under Johnson. Yes. And so what this Court has said, what the initial, for an initial 2255, the defendant has to assert a right that was initially recognized by the supreme court. The right that the court initially recognized in Johnson is the right not to be sentenced based on the residual clause of the ACCA. So if the defendant was sentenced explicitly only on the elements clause or the force clause, they're not asserting a right originally recognized in Johnson. Now, counsel, you didn't make this argument before the district court. Why can't we say that the government has waived this argument? Well, I think that the argument that we did make, of course, the initial briefing in the district court was before Giozo's. And what we had in Giozo's was every court that had looked at Florida armed robbery had said that it falls under the element clause. But the argument was still available to be made regardless of the existence or nonexistence of Giozo's. And so my question is, again, why shouldn't you be deemed to have waived this argument because it was not made in the district court? I think that two things. One, that the argument that they didn't make a Johnson claim, that their motion does not make out a Johnson claim, is implicit in our response. I mean, we didn't explicitly say, it's true, we didn't explicitly say. We went right to the merits and we said every court in the country says Florida armed robbery is a crime of violence based on its elements. So we didn't explicitly make that. And so, I mean, yeah, in retrospect, obviously, we should have. But the sort of the nut of that response is the defendant is not making a Johnson claim. Johnson has no effect on this sentence because this qualifies under the force clause. Now we know that in this circuit, that is not the case. That happened after the district court had denied the 2255. So, but we're still left with what Giozo's did was it carved out an exception. Okay, the defendant has a burden to show that they were sentenced, that they were sentenced under the residual clause, right, in which case they would have relief. If they weren't, if they were sentenced only under the force clause, they wouldn't have relief. What Giozo said is where the judge didn't say anything, and therefore, and therefore it's like a general verdict, right, where it's like a general verdict, we're going to let the defendant say, okay, like the general verdict, if there were two theories and it's not clear which theory the judge relied on or which in the general verdict case the jury relied on. Roberts. And so what is your argument then as to why he has not met that standard here? Because we don't know, it is unclear, which of the two clauses the district court originally relied on. He not only hasn't made a showing either that he was sentenced under the residual clause or that the judge didn't say anything at sentence, at sentencing, so that it falls under that Giozo's exception. He hasn't even alleged that. No, I think the standard is if it's unclear, right, if it's unclear which of the two clauses formed the basis for the sentence, the defendant gets in the door. And it is totally unclear here. It's so unclear that you guys couldn't even produce the transcript. So we have no, we literally have no idea. Well, I think in the Giozo's, you know, in the first two pages of the Giozo's decision, the Court noted four times that at sentencing the district court did not specify. And the question presented in Giozo's is when a defendant is sentenced under. In this case, we don't know if the district court specified or not because we don't have the transcript. Yes. But, I mean, but there are other ways to at least allege. I mean, the defendant doesn't even allege that the district court didn't say anything at sentencing. I mean, this is like taking, that could be an affidavit from the defendant. That could be an affidavit from defense counsel. That could be, I mean, something. This is, I mean, I will say that the response in the reply brief was, well, this was 12 years ago. How could anybody remember anything? And that might be true. But this was a very high-profile case. This was a 24-hour armed standoff with SWAT in Henderson, Nevada. That is not something that happens every day. It is entirely possible. Ginsburg. Well, the underlying events were spectacular, but not necessarily the court proceeding. Perhaps. But then right before sentencing, the defendant sends a letter to the judge saying my attorney is trying to hoodwink me into this sentence and I don't fall under this guideline. And then the minutes of the sentencing says there was discussion about that. All I'm saying is that the defendant has a burden here. And if, it's kind of like, so the analogy is to the general verdict, right? That's the analogy that the court made in Giosos. So I think that under their reasoning of how this should go, any time an indictment is multiplicitous or duplicitous, I always get this confused, right, where there's two and one. A defendant should be entitled to relief without even having to allege that the jury did return a general verdict. Counsel, I'm puzzled about what happened in terms of recording these proceedings because I know there are people who are employed full time to do nothing but this. It is true. And so I'm really curious about how this came to be. I don't know. I know that, I mean, the sentencing hearing was 12 years ago when the court. But those are supposed to be kept regardless. Yeah. And that's another thing that the party with the burden might want to explore. I mean, you know, the court ordered the government to, you know, in the briefing on the certificate of appealability, the court ordered the government to file this brief and we filed our standard request. It's totally out of the defendant's control whether or not the government's employees fulfilled their responsibilities as required. And it's out of the United States Attorney's Office's control as well. I mean, all we know is that the clerk's office says the recording is not available. But that doesn't, I mean, I think that. That makes it unclear then, right? If the recording isn't available, who bears the brunt of that? Doesn't that make it unclear and, therefore, you're to the benefit of the defendant? I would say that the party that bears the burden of making at least a threshold showing, I mean, for all we know, and I'm not, I'm absolutely hypothetically, right, for all we know, if the defendant who bears the burden got in touch with his trial counsel, who's still, as far as I know, an FPD in another district, and said, do you remember this? Do you remember what the judge said about this? He said, oh, yeah, he told the defendant that robbery is a crime of violence because it has as an element the use of force against the person of another. I mean, for all we know, because as far as we know, they haven't even attempted to demonstrate that they've met their burden at all. I mean, and, in fact, if you look through their briefing, they do not even allege that the judge was silent at sentencing or that he was sentenced under the residual clause. They just say, we use the word Johnson, therefore we get relief, without having to make, without having to meet any burden at all or make any showing at all. And I think that that, I mean, if that's the case, then what does it mean to say that a 2255 defendant has a burden? Well, this is a very unusual case in that the proceedings were not preserved. Yes. So this will not occur, hopefully, within frequency. You know, and I was thinking about that. This might actually be a 20th century problem that we never have to deal with again, but then, you know, but then we have the hurricane in Houston and, I mean, it could conceivably be that there could be cases in the future where records are lost or destroyed or damaged, and if a defendant simply doesn't have any burden at all to show that they fall within whatever the rule is, you know, then that just really goes against what we've always said about 2255s. I really was anxious to hear your argument today, because I'm frankly puzzled as to why your office didn't concede that he was entitled to relief once Giosos came down. And so what is it that's so, what principle is so important that you're trying to vindicate here on the government's behalf? Because I'm really struggling to see it. Well, frankly, I mean, I think that this was, and we have, I mean, obviously our office has conceded a number of these, you know, in particular some initial cases. We haven't had that many in the District of Nevada, but, you know, but this case, this defendant has spent, other than when he's been incarcerated, he has spent his adult life terrorizing people with guns. And now he's just about to get out, and he's going to start a term of supervised release, which the reason, when he's ACCA, it's a five-year term of supervised release. If he's not ACCA, the maximum is a three-year term of supervised release. So that would be knocked down, right? The way the Bureau of Prisons manages this is, if it's determined that he wasn't ACCA, and therefore he's only got a 10-year max, he has over-served three years of time. And what they do is, he'll have three years of supervised release. If he violates his term of supervised release and is sent, and is revoked and sent back, the BOP gives him credit for that time. So he'll immediately be left, be released, which means that this, that doing this will eliminate the district court's ability to, you know, you've got the carrot and the stick, and this will eliminate the stick. And this defendant needs. Roberts. Okay. And that's the motive. That's why you're. O'Connell. That's why we're here. Roberts. Okay. That's what I thought. But there's no general legal principle that is beyond the particular facts of this case.   I think this is a really odd case, and I don't see it happening a lot. But I do think that we are in this, I mean, as they pointed out in their reply brief, I mean, the legal question that the district court had is whether this defendant is an armed career criminal. And now 13 years later, we are in a world where the fact that he has spent his adult life terrorizing people with guns is irrelevant to that inquiry. I mean, as many judges have noticed, this, you know, something. You can thank the Supreme Court. And part of it is, I mean, the Supreme Court has said, has set these laws and decided these cases that are about attempted burglary and DUI and simple assault. You know, I don't even know that they've had a case. I mean, defendants are arguing that murder is not a crime of violence, that armed robbery is not a crime of violence. And I don't know that the court really understands what they have brought with these decisions. You mean the Supreme Court? The Supreme Court, yes, absolutely. Not the legal. No, many judges on this Court and many judges in district courts and court of appeals around the country have expressed just absolute exasperation with where we are. The problem is we're bound by it, though. Yes. That's the problem. That's it. So until the pendulum swings, that's where we are. All right. Thank you, counsel. Go ahead. And just to say, yes, and so, and we understand that we are also bound by this Supreme Court's law, and where we don't have a non-frivolous argument to make, we have been conceding. But with this defendant in this case, we felt like we had a non-frivolous argument to make, and it's a reasonable one. We understand your argument. Thank you, counsel. You exceeded your time, counsel, but we'll give you two minutes for rebuttal. Thank you, Your Honor. Just one quick point on rebuttal. This case is unique not only because there is no transcript, the reporter's notes of the recording was lost, apparently, but because it's also unique because the government didn't raise this issue below. So Donnelly cannot now be faulted on appeal for not exploring this issue when the government never put it into controversy. But opposing counsel makes two points. One is that the argument was implicit in the explicit argument that it made, and two, that Donnelly has the burden of proof and should not just be allowed to rely on the fact that the government didn't explicitly make the argument. What's your response? So to the first point, my response would be that I don't read the response that way. The government engaged on the merits. It said, no, there's no entitlement to relief here because he still qualifies under the force clause. The priors still qualify under the force clause. And that's the merits analysis, as was entertained in Gioza's and this court came out the other way. So that's what the government was addressing only. And I think the response was very clear that that's all the government was addressing. And two, as to the second point, that I apologize, Your Honor. The burden is on your client. In the first place. Yes. So we, our position is, and it's a plain reading of the statute, is that the way you assert the right, that the statute only requires that you assert the newly recognized right. And that's what Donnelly did throughout his motion to vacate. He asserted Johnson. He explained why the residual clause is no longer in effect under Johnson. And he explained also why he won under the merits. So he met both challenges. If the government had a challenge or didn't agree with the interpretation of the statute and thought that more should have been shown, it was the government's duty and its response to defend it in that way, to raise a timeliness defense, just like the government would have to bring a procedural bar or something else in all the other habeas defenses that are available. The government had a part to play in that, too. And because the government didn't do that and Donnelly is entitled to relief on the merits, we would ask that you reverse the order and remand for resentencing. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for a decision by the court. The next case on calendar, United States v. Woods, has been submitted on the briefs. The final case on calendar for argument today is NLRB v. International Association of Bridge Structural, Ornamental, and Reinforcing Iron Workers Union, Local 433. Thank you.
judges: Wallace, Rawlinson, Watford